MINTON, C.J., CONCURRING:
The majority provides a well-written contract-law analysis of the issues presented in this case, with which I fully concur. But I write separately to emphasize that this case can be decided on a principle that this state has recognized for almost 100 years, "that any conduct or contract of an illegal, vicious, or immoral nature cannot be the basis of a legal or equitable proceeding...."[1]
As the majority recognizes, the contract between Vanhook and Kay & Kay is subject to the rules and regulations of the HUBZone Program. Two regulations, 13 C.F.R. § 126.700 and 13 C.F.R. § 125.6, are of particular relevance in this case.[2]
The applicable version of 13 C.F.R. § 126.700, promulgated under the authority given by Congress to the Small Business Administration under 15 U.S.C. § 657a, is entitled "What are the performance of work requirements for HUBZone contracts?" 13 C.F.R. § 126.700(a) states, "A prime contractor receiving an award as a qualified HUBZone SBC must meet the performance of work requirements set forth in § 125.6 of this chapter." 13 C.F.R. § 125.6, in turn, is entitled, "Prime contractor performance requirements (limitations on subcontracting)." A list of threshold cost percentages that a subcontractor can receive and not violate HUBZone law appears in 13 C.F.R. 125.6(c). And 13 C.F.R. 126.700(b) provides a list of those threshold cost percentages.
We do not know exactly how the facts of this case square with these federal rules and regulations. But both parties concede that if the parties drew the contract to provide Kay & Kay with the money it asserts in its quantum meruit claim today, it would violate federal law, i.e. the HUBZone statutes and regulations, which provide certain contract amounts that a *575 non-HUBZone-qualifying subcontractor can contract for without violation. Even if the parties did not concede this point, their actions speak for themselves.
Kay & Kay and Vanhook framed their relationship in this case so as not to violate federal law-their Team Agreement was drawn up to avoid such an issue. Now, Kay & Kay asserts that Vanhook owes it more money, the giving of which would fly in the face of their constructed relationship because it would allow Kay & Kay to do the very thing federal law prevents-awarding a non-HUBZone-qualifying entity more of the contract price than federal law allows.
Kay & Kay attempts to justify its position by asserting its claim under a quantum-meruit theory instead of a breach-of-contract theory, positing that receiving money under a quantum-meruit theory would not violate federal law because receipt of this money arose from equity rather than contract law. The fact that Kay & Kay did not pursue a breach-of-contract claim essentially amounts to an admission that it cannot pursue a breach-of-contract claim in this case because such claim would acknowledge that an illegal contract exists, meaning a contract that awards Kay & Kay more money than what federal law allows.
Equity cannot be a vehicle to make illegal conduct legal. Kay & Kay cannot pursue a quantum-meruit claim to recover damages, the receipt of which would violate the law.
Because Kay & Kay is attempting to recover damages, the receipt of which would violate federal law, I would reverse the Court of Appeals and reinstate the trial court's decision.
VanMeter, J., joins.

Robenson v. Yann, 224 Ky. 56, 5 S.W.2d 271, 274 (1928) ; see also McMullen v. Hoffman, 174 U.S. 639, 662, 19 S.Ct. 839, 43 L.Ed. 1117 (1899) ("It is no part of a court of justice to aid either in carrying out an illegal contract, or in dividing the proceeds arising from an illegal contract between the parties to that illegal contract.").

We note that, as the majority points out, the written agreements between the parties arose between 2010 and 2011, so we located the particular versions of these regulations applicable to this case. When we refer to these regulations, we are referring to the version of 13 C.F.R. § 126.700 promulgated on June 17, 2005, and taking effect on August 30, 2005, and of 13 C.F.R. § 125.6 promulgated on October 1, 2008, and taking effect on October 31, 2008. 13 C.F.R. § 126.700, 70 FR 51243-01, 2005 WL 2071548 (August 30, 2005) ; 13 C.F.R. § 125.6, 73 FR 56940-01, 2008 WL 4410591 (October 31, 2008). For the language of relevance regarding 13 C.F.R. § 125.6, see 69 FR 29411-01, 2004 WL 1143809 (June 23, 2004).